UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

PATRICIA D. PHILLIPS,                          Civ. No. 10-3069 (MJD/LIB)

      Plaintiff,

v.                                              **REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE,

      Commissioner of the Social Security Administration,

        Defendant.

## I.     INTRODUCTION

Plaintiff Patricia D. Phillips ("Phillips") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI).  The parties have filed cross-motions for summary judgment, which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends that Phillips' motion for summary judgment (Doc. No. 29) be DENIED, and the Commissioner's motion for summary judgment (Doc. No. 35) be GRANTED.

## I.   PROCEDURAL HISTORY

Phillips filed applications for DIB and SSI on September 12, 2006, alleging that she became disabled on November 30, 2004.  (T. 90-101 ).[1]  She meets the insured status requirements through December 31, 2011.  (T. 11).  Phillips' applications were denied initially on February 21, 2007, and upon reconsideration on July 30, 2007.  (T. 53-57, 62-67).  Phillips requested a hearing before an administrative law judge ("ALJ"), and the hearing was held before ALJ David Gatto on June 18, 2008.  (T. 68, 22-42).  The ALJ issued an unfavorable decision on July 23, 2008.  (T. 8-21).  Phillips then filed a request for review with the Appeals Council.  The Appeals Council denied her request on May 14, 2010 (T. 1-4), thereby making the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.  See Grissom v. Barnhart, 416 F.3d 834, 836 (8th Cir. 2005).

## II.   FACTUAL BACKGROUND

### A.   Medical Records

Phillips went to St. Cloud Hospital on May 17, 2004, complaining of abdominal pain, nausea and vomiting.  (T. 314).   Her medical history included pancreatitis,[2] alcoholism, hypothyroidism, restless leg syndrome, and medication induced seizures.  (Id.)  Phillips denied alcohol use.  (Id.) On examination, she did not appear to be in any

---

[1]     Throughout this opinion, the Court cites the Supplemental Administrative Record, Docket No. 28, as "T."

[2]     Pancreatitis is inflammation of the pancreas.  Stedman's Medical Dictionary 1302 (27th ed. 2000).  The principle causes of pancreatitis are cholecystolithiasis (gallstones), alcoholism, abdominal surgery, endoscopy of biliary and pancreatic ducts, and blunt abdominal trauma.  Id. at 1302 and 339. Chronic relapsing pancreatitis is usually due to repeated exposure to the etiologic factor such as partial ductal obstruction or chronic alcoholism.  Id.

distress.   (Id.)   She had a right upper quadrant ultrasound, and the results were unremarkable, with no evidence of biliary disease.  (T. 317).

Phillips sought treatment for abdominal pain from Dr. Lola Sutherland at Mid-Minnesota Family Practice Center ("Mid-Minnesota") on August 2, 2004.  (T. 225-28). Phillips' pain occurred after eating, and the pain was manageable.  (T. 225).  Her physical examination was normal with the exception of mild tenderness of the right upper quadrant.  (T. 227).  Phillips reported abstaining from alcohol.  (Id.)

Phillips' next medical record is from May 5, 2005, when she was evaluated at Mid-Minnesota for abdominal pain.  (T. 223-24).  Phillips admitted drinking a few sips of peppermint schnapps two days earlier.  (T. 223).  On examination, she was in no acute distress but had some tenderness in the right upper quadrant.  (Id.) Phillips' liver function panel was normal, and she was scheduled for a right upper quadrant ultrasound.  (T. 224).  Two days later, Phillips was admitted to St. Cloud Hospital.  (T. 299).  She admitted to drinking the majority of a bottle of schnapps with a friend on May 1, which she reported was her first drink in six years.  (Id.)  Plaintiff also admitted to marijuana use, especially when her pain increased.  (T. 301.)

Despite normal lab tests, Phillips believed her symptoms were similar to her prior pancreatitis pain, and she wanted to be admitted for pain control.  (T. 300).  On examination, she was in no acute distress and had minimal tenderness over the right upper quadrant.  (T. 301).  She was treated with morphine.  (T. 302).  Dr. Joseph Blonski stated that "this may represent pancreatitis with a burned out pancreas which is

unable to cause a rise in lipase[3] and amylase[4] levels, however, other etiologies also need to be considered such as peptic ulcer disease or significant gastritis." (T. 306).

When Dr. Albert Hammond evaluated Phillips on May 8, 2005, he could not find documentation to support a diagnosis of chronic pancreatitis, whereas Phillips' previous episodes of pancreatitis were associated with elevation of amylase and lipase and peripancreatic edema shown on CT scan. (T. 310-11). Additionally, Dr. Hammond was not sure Phillips was having significant pain because objective signs were not present, although he noted it was possible for patients to have a bout of chronic pancreatitis with normal pancreatic enzymes. (T. 310). Dr. Hammond suggested that if Phillips' pending evaluation at Mayo Clinic was unrevealing, he would consider an endoscopic ultrasound to look for evidence of chronic pancreatitis and/or pancreatic duct abnormalities. (Id.) Phillips was discharged the next day with a diagnosis of "epigastric and right upper quadrant pain with endoscopy showing prepyloric erosions, gastritis with normal pancreas on CT scan and ultrasound." (T. 295-98).

Phillips drank a liter of schnapps on October 5, 2005, and then sought treatment at St. Cloud Hospital for abdominal pain. (T. 293-94). On examination, Phillips had only mild epigastric tenderness, and her alcohol level was .21. (Id.) Phillips was treated with morphine for suspected pancreatitis and then discharged. (T. 294). Three weeks later, Phillips sought treatment at Mid-Minnesota for continuing abdominal pain. (T. 221-22). Phillips declined testing to rule out kidney stones or gallbladder problems, because she did not have insurance. (T. 221-22). She reported being under high stress

---

[3]     Lipase, in general, is any fat-splitting enzyme. *Stedman's* at 1019.

[4]     Amylase is one of a group of enzymes that split starch, glycogen and related glucans. *Stedman's* at 65.

because she would start a new job soon.  (T. 221).  She was prescribed Compazine and Vicodin.  (T. 222).

Phillips was next treated for abdominal pain and vomiting on April 9, 2006, and she reported that she had not had any alcohol recently.  (T. 288, 290).  Her numerous past ultrasounds had not shown gallstones.  (T. 288).  On examination, she was in no obvious distress, but she felt this was her typical pancreatitis pain.  (Id.)  Phillips was treated with morphine and Reglan, and then discharged from St. Cloud Hospital with a prescription for Vicodin.  (T. 291-92).

Several months later, on July 11, 2006, Phillips sought treatment for vomiting, abdominal pain, chest pain and diarrhea.  (T. 284-86).  On examination, she was in no apparent distress and had only mild tenderness to the epigastric region, but she was admitted to St. Cloud Hospital.  (T. 285.)  She denied drinking alcohol for the last seven years but admitted to smoking pot occasionally.  (Id.)  Dr. Jessica Kumar diagnosed chronic pancreatitis, and she also noted electrocardiogram changes, which required ruling out myocardial infarction.  (T. 286-87).

The next day, Dr. Thomas Satre noted that Phillips' past extensive workup for pancreatitis showed some mild ductal abnormalities, but the most likely cause of Phillips' medical history was alcohol abuse.  (T. 281).  Phillips was working for a credit agency, and she reported not drinking for a year.  (T. 282).  Myocardial infarction was ruled out.  (T. 279).  Phillips' abdominal pain and nausea decreased, and she was discharged on July 16.  (T. 278-79).

Phillips was feeling better but still had epigastric pain on July 20, 2006. (T. 215). She was prescribed Vicodin. (Id.) Several days later, Phillips reported she forgot to take her Vicodin on an out of town trip, and her abdominal pain returned with more nausea and vomiting. (T. 212). Plaintiff appeared to be in acute distress at first, but soon calmed down and seemed to be doing a lot better. (T. 212-13). Phillips was given a shot of Toradol and Phenergan. (T. 213).

Just days later, Phillips had gone through twenty Vicodin without pain relief, and she was admitted to St. Cloud Hospital. (T. 211, 266). She appeared to be in moderate distress. (T. 267). Dr. Peter Nelson, a gastroenterologist, evaluated Phillips for chronic pancreatitis the next day. (T. 272-74, 263). Dr. Nelson suspected relapsing pancreatitis, although lipases were normal and a recent CT scan of the abdomen showed no gallstones or wall thickening, but the pancreas was described as slightly echogenic. (T. 273). He noted Phillips' pain complaints were a bit discordant with her physical examinations. (T. 274). Phillips had an abdominal CT scan on July 30, and it suggested the possibility of pancreatic edema. (T. 275). Phillips was discharged from the hospital on July 31, 2006. (T. 263). She was started on Viokase, a pancreatic enzyme. (T. 264). The results of her outpatient EGD were normal. (T. 209).

On August 11, 2006, Phillips reported to Dr. Mohamed Youssef Maray at Mid-Minnesota that she was still in pain most of the time, and taking more than eight Vicodin a day. (T. 209-10). Dr. Youssef raised the possibility of irritable bowel syndrome because Phillips reported alternating diarrhea and constipation. (T. 210). He prescribed dicylomine, and he advised Phillips not to exceed eight Vicodin per day. (Id.) Phillips' pain had significantly improved on August 21, after she started using fentanyl

patches.  (T. 206).  Plaintiff was eating, gaining weight, and taking less Vicodin.  (Id.) She had a little more energy and was considering going back to work.  (T. 207).  Phillips was also on a starter dose of Effexor for depression, and her depression had improved, so the dose was increased.  (Id.)  Dr. Sutherland diagnosed depression and pancreatitis.  (T. 207-08).

On September 12, 2006, Dr. Sutherland noted Phillips had been back to work as a bill collector, but she was just laid off.  (T. 204).  Phillips continued to feel depressed and was under financial pressure.  (Id.)  Dr. Sutherland prescribed Vicodin for intermittent use to treat abdominal pain.  (T. 204-05).  Two weeks later, Phillips was doing relatively well.  (T. 201).  Dr. Sutherland prescribed fentanyl patches and Vicodin. (T. 202).

Phillips went to St. Cloud Hospital on October 3, 2006, after a sip of peppermint schnapps caused abdominal pain.  (T. 259).  Phillips' admitted to "very occasional" alcohol use.  (T. 415).  Upon physical examination, Phillips seemed tender in the right upper quadrant, but the attending physician noted Phillips was comfortable and watching television.  (T. 260).  Lipase, ultrasound and CT scans were normal, and Phillips was discharged after being treated with morphine.  (T. 260, 416.)  Upon discharge, Dr. Joseph Randolph advised Phillips to avoid alcohol.  (T. 260).  Several days later, Phillips went to Health Partners Central Minnesota Clinics to establish care, as an alternative to a referral she was given to Mayo Clinic.  (T. 236-38).  In reviewing her medical history, Phillips told Dr. Mary Berg that she had alcohol induced pancreatitis, but she had not used alcohol for eleven years.  (T. 236).  Phillips complained of sharp abdominal pain, relieved by Vicodin, but she had not used any

recently.  (Id.)  Dr. Berg prescribed Vicodin and Nexium and arranged for further testing and a referral to Central Minnesota Surgeons to determine whether Phillips was a candidate for cholecystectomy.  (T. 237-38).

On October 10, 2006, Phillips returned to St. Cloud Hospital for treatment of vomiting and abdominal and chest pain.  (T. 409).  She denied alcohol use.  (Id.)  Her lipase was elevated.  (T. 404).  She did not want to be admitted.  (T. 400).  However, she returned and was admitted because she could not control the pain.  (Id.)  Phillips improved daily and her lipase decreased.  (Id.)  She was discharged on October 15, 2006.  (T. 399-401).  Dr. Jessica Kumar advised that Phillips should keep her appointment with a gastroenterologist at Mayo Clinic on October 17, take her medications as prescribed, abstain from alcohol, and eat a low fat diet for two to three weeks.  (T. 401, 410).

Phillips next followed up with Dr. Sutherland on November 13, 2006, and reported that she was planning a week-long vacation and needed more Vicodin.  (T. 431).  Dr. Sutherland noted the following:  Phillips' CT scans were negative for gallbladder problems; Phillips probably had irritable bowel cramping because dicyclomine had been helpful; Phillips recently abused Vicodin and significant withdrawal symptoms gave her upper quadrant pain; and when her lipases went up significantly in the hospital, it was related to resumption of significant alcohol.  (T. 432).  Dr. Sutherland strongly recommended AA or chemical dependency assessment.  (T. 433).  She diagnosed chronic and acute pancreatitis, narcotic withdrawal and overuse, chemical dependency, hypothyroid, and depression.  (Id.)

In January 2007, when asked to complete a disability form from Minnesota Department of Employment and Economic Development, Dr. Sutherland gave Phillips work restrictions of 25 pounds lifting due to her deconditioning and tender abdominal muscles.  (T. 429).  She also restricted Phillips to working twenty hours per week, because she did not tolerate stress well and had frequent pancreatitis flares.  (Id.)  Dr. Sutherland noted Phillips last worked in September 2006, and she resigned because of her abdominal pain.  (Id.)  Phillips was sober since October.  (Id.)

Phillips followed up with Dr. Sutherland on February 15, 2007, and Dr. Sutherland completed temporary disability forms for Phillips.  (T. 427).  The next day, Phillips went to St. Cloud Hospital for vomiting and abdominal pain.  (T. 374).  On examination, Phillips was in no acute distress and only slightly tender in the mid-epigastric region.  (T. 375).  Dr. Joseph Blonski noted Phillips had failed to follow up at Mayo Clinic for pancreatitis. (T. 377).  Phillips believed her flare of pancreatitis could have been caused by taking Nyquil for the last week.  (T. 389).  An ultrasound of her abdomen was consistent with chronic pancreatitis.  (T. 375, 398.)  Her lipase was normal, and the diagnosis was possible pancreatitis.  (T. 389).

While in the hospital, Phillips had a gastroenterology consult on February 22 with Dr. Bradley Currier.  (T. 393-96).  Dr. Currier noted that Phillips had a history of pancreatitis since 1998, and she was diagnosed with chronic pancreatitis at Mayo Clinic in March 2001.  (T. 394).  Phillips reported not having any alcoholic beverages since 1998, until her recent Nyquil use.  (Id.)  There was no evidence of pancreatitis on Phillips' abdominal CT scan.  (T. 397).  Dr. Currier recommended repeat ERCP to look for pancreatic ductal strictures, which could be stented to improve pain.  (T. 396).  An

ERCP was done the next day, and it did not show ductal narrowing.  (T. 386).  Phillips was discharged on February 24, 2007.  (T. 384-86).  She was counseled not to use recreational drugs, stop smoking and absolutely not to use alcohol.  (T. 386).

On February 19, 2007, Dr. P.E. Shields reviewed Phillips' records and completed a Psychiatric Review Technique Form at the request of the SSA.  (T. 349-62).  He opined that Phillips had affective, anxiety and substance addiction disorders, causing mild restriction in activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence or pace.  (T. 349, 359).  Dr. Shields also completed a Mental Residual Functional Capacity Assessment form.  (T. 363-66).  He indicated Phillips would be markedly limited in the ability to understand, remember and carry out detailed instructions.  (T. 363).  He also suggested Phillips would be moderately limited in many work-related mental activities.  (T. 363-64).  Finally, Dr. Shields opined that Phillips had the mental residual functional capacity to concentrate on, understand, remember and carry out routine, repetitive tasks with adequate persistence and pace.  (T. 365).  She would be restricted to brief and superficial contact with co-workers and the public but could accept supervision and tolerate the routine stressors of a routine, repetitive work setting.  (Id.)

On February 21, 2007, Phillips underwent a consultative psychological examination by Dr. James Lewis to assess her social security disability claim.  (T. 329-33).  Phillips reported she could not work due to pancreatitis and panic attacks.  (T. 329).  According to Phillips' social history, she was divorced twice, had three grown children, and was living with a significant other.  (T. 329).  She completed high school,

two years of college, and a secretarial program.  (Id.)  Phillips lost most of her jobs due to missing work from illness.  (T. 330).

Phillips' hobbies included crocheting, reading, watching television, listening to music, and attending church.  (Id.)  She described her daily activities as getting up between 7:00 and 8:00a.m., eating, showering and dressing, and watching television until noon.  (Id.)  Her boyfriend prepared lunch.  (Id.)  In the afternoon, she did housework, played with the cats, watched television, and had a snack for dinner.  (T. 331).  She went to bed between 8:30 and 9:00p.m.  (Id.)  Phillips had friends she talked to on the phone and had a good relationship with her children.  (Id.)  She smoked, and she quit drinking in 1994 after she was diagnosed with pancreatitis.  (Id.)  Phillips' mental status examination was normal with the exception of flat and blunted affect and low energy.  (Id.)

Phillips reported being tired all the time, daily crying spells, panic attacks in public places, only feeling safe in her house, and she was in an abusive relationship in the past.  (T. 331-32).  Dr. Lewis diagnosed major depressive disorder, panic disorder with agoraphobia, alcohol dependence in remission, and he assessed a GAF score of 55.[5] (T. 333).  Dr. Lewis opined:

---

[5]     The Global Assessment of Functioning Scale ("GAF") is used to report "the clinician's judgment of the individual's overall level of functioning."  Hudson ex rel Jones v. Barnhart, 345 F.3d 661, 663 n.2 (8th Cir. 2003) (quoting Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-tr") (4th ed. text revision 2000)).  GAF scores of 41 to 50 reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).  Id.  (citing DSM-IV-tr at 34).  GAF scores of 51-60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.)"  DSM-IV-tr at 34.

> [Phillips] is able to remember and carry out two-step
> directions.  Speed of work will be hindered by depression,
> decreased tolerance for pain due to depression, and low
> energy.  Ability to make executive decisions will be hindered
> when panic attacks occur.  [Phillips] will have problems
> relating to coworkers, job supervisors, and the public due to
> depression, panic attacks, and decreased tolerance for pain.
> [Phillips] is not able to tolerate the stress of the workplace.

(Id.)

Phillips followed up with Dr. Satre on March 14, 2007, and reported doing better. (T. 421-22).  She was under increased stress because her mother died and her son was arrested.  (T. 422).  She was taking zero to six Vicodin a day and reported significant difficulty sleeping.  (Id.)  Dr. Satre increased Phillips' Zoloft and prescribed Trazadone for sleep.  (Id.)  When Phillips returned a month later, she reported traveling back and forth to South Dakota to take care of her mother's estate.  (T. 423).  Her abdominal pain returned after feeling better for a week or two.  (Id.)  Dr. Satre advised Phillips he would taper her off narcotic medication after she finished tying up her mother's estate.  (Id.)

Phillips went to St. Cloud Hospital on May 25, 2007, for treatment of severe abdominal pain, vomiting, shortness of breath and intermittent chest pain.  (T. 378). Phillips was admitted to treat moderate exacerbation of chronic pancreatitis.  (T. 380, 474).  She had sinus bradycardia, which was thought to be related to her hypothyroidism.  (Id.)  Her TSH level was very high, and she admitted not taking her medication for several weeks.  (T. 468).  When Dr. Satre saw Phillips in the hospital, he noted that Phillips' past studies showed some mild ductal abnormalities, but the most likely etiology of chronic recurrent pancreatitis was her history of alcohol use.  (T. 379). Phillips was discharged on May 27, after her pain resolved.  (T. 468).

Phillips followed up with Dr. Satre on June 6, 2007, and reported stopping all of her medications except Synthroid, due to side effects of intense restlessness. (T. 424). Dr. Satre opined the restlessness could be a medication side effect or a manifestation of anxiety. (T. 424-25). He discontinued Phillips' Zoloft and started Remeron. (Id.)

Phillips was next treated for vomiting, diarrhea and abdominal pain on July 2, 2007, at St. Cloud Hospital. (T. 391-93.) Her lab tests were normal, and she was treated for nausea and pain. (T. 392.) Phillips then had to leave, because she had an urgent family problem. (Id.) She was prescribed Vicodin. (Id.)

On July 10, 2007, Dr. Satre wrote a letter regarding disability on Phillips' behalf. (T. 434-35). Phillips was a patient at Mid-Minnesota since 2001 and had intermittent hospitalizations for chronic pancreatitis. (T. 434). Dr. Satre opined that Phillips would likely continue to need intermittent hospitalizations, precluding her from work. (Id.) He noted that she had 28 days of hospitalization since July 2006, which averaged over two days a month, not including additional recuperation time. (Id.) He opined that between exacerbations, Phillips did reasonably well and likely could work eight-hour days. (Id.)

Two weeks later, Dr. Charles Grant reviewed Phillips' records and completed a Physical Residual Functional Capacity Assessment form at the request of the SSA. (T. 439-446). He opined that Phillips could perform light exertional work with lifting twenty pounds occasionally, and standing, walking or sitting for six hours each in an eight-hour workday. (T. 440).

Phillips was admitted to St. Cloud Hospital again on August 15, 2007, for recurrent abdominal pain, nausea and vomiting. (T. 454). Phillips reported that her

depression and anxiety were not currently active.  (T. 458).  A CT scan of her abdomen was normal, and she had a mild fatty liver.  (T. 453).  Her pain was slow to recover, and she stayed in the hospital nine days.  (T. 452).

On November 1, 2007, Dr. Satre noted Phillips had been caring for her brother's children over the last month.  (T. 482).  Phillips was extremely stressed about her son's problems.   (T. 482-83).   Her symptoms were stress, trouble sleeping, trouble concentrating and crying episodes.  (Id.)  Her pancreatitis was a little better.  (Id.)  Dr. Satre increased Phillips' antidepressant and strongly recommended that she seek counseling.  (Id.)

Phillips underwent a clinical assessment with Licensed Psychologist Diane Bosl at Psychotherapeutic Resources on November 2, 2007.  (T. 489, 492-94).   Phillips attributed her increased depression and anxiety to her son's problems.  (T. 492).  She also had financial, relationship, housing, occupational and health stressors.  (Id.)  She had been arrested for DUI on October 21, 2006.  (Id.)  On mental status examination, Phillips was rigid, tense, depressed, sad and anxious.  (T. 493).  Phillips scored twenty on the PHQ-9,[6] warranting treatment for depression.   (Id.)  Bosl diagnosed major depressive disorder, severe; panic disorder without agoraphobia; alcohol dependence in full remission, and she assessed a GAF score of 55.  (T. 494).

When Phillips saw Dr. Satre on November 27, 2007, she reported vomiting and abdominal pain after eating.  (T. 484).  She had been happy with her progress up to that time, and had discontinued Vicodin for a few days.  (Id.)  Phillips wanted to avoid

---

[6]      PHQ-9 stands for Personal Health Questionnaire Depression Scale.  A score of 15 or greater is considered major depression and 20 or more is severe major depression. http://patienteducation.stanford.edu/research/phq.pdf

hospitalization, so she was prescribed a stronger fentanyl patch and Vicodin.  (T. 485).

Three days later, Phillips was slightly better but could not tolerate solid food.  (T. 486).

Phillips returned on December 18, 2007, having improved but suffering anxiety due to

her son's problems.  (T. 487).  She was also planning a three week family reunion in

Virginia, leaving in a few days.  (Id.)

On January 22, 2008, Diane Bosl completed a disability form concerning Phillips.

(T. 490-91).  The form required Bosl to check a box to indicate whether Phillips had very

good, good, fair or poor or no ability to do twenty-three mental activities related to

unskilled work.  (Id.)  Bosl indicated that Phillips would have poor to no ability to do

nineteen of the mental work-related activities.  (Id.)  Bosl's explanation was that Phillips

had major depression, panic disorder and physical limitations.  (T. 491).  She also

opined Phillips would miss work more than three times a month due to her impairments.

(Id.)

Phillips was once again admitted to St. Cloud Hospital on January 24, 2008, for

vomiting and abdominal pain.  (T. 520).  She appeared uncomfortable and was tender in

the epigastric area.  (T. 521).  Four days into her hospitalization, Phillips had a

psychiatric consult with Physician Assistant Melissa Chapman.  (T. 522-26).  Phillips

complained that nursing staff did not believe she was in pain.  (T. 522).  Phillips

reported feeling overwhelmed by financial problems and her son's legal problems.  (T.

523).  Phillips gave varying stories about her sleep quality, and she admitted to

significantly poor memory and concentration, nervousness, anxiety and chronic suicidal

ideation, which she would not carry out.  (Id.)  On mental status examination, Phillips'

mood was somewhat dysphoric and stressed; her affect was somewhat dramatic, her

speech was "pushed"; her thought processes were coherent but sometimes rushed; and her concentration and memory appeared slightly impaired.  (T. 525).  Chapman diagnosed depression, NOS;  anxiety, NOS; mood disorder secondary to medical condition with features of major depressive disorder and anxiety, and she assessed a GAF score of 50.  (T. 526).  Phillips was discharged on February 1, 2008, after her pain and nausea resolved.  (T. 517-18).

Phillips saw Dr. Nam Ho at Mid-Minnesota on March 19, 2008, for abdominal pain after eating popcorn and food from McDonald's.  (T. 538).  Phillips took Tylenol #3 for pain, but it made her vomit.  (T. 538-39).  She had stopped using Vicodin because it upset her stomach.  (T. 539).  Her depression and anxiety had improved since her hospitalization.  (Id.)  Phillips was prescribed a fentanyl patch.  (Id.)  Several weeks later, on April 10, Phillips saw Dr. Satre and reported that her anxiety increased in relation to her son's legal problems.  (T. 536).  She had a couple panic attacks in the last two weeks.  (Id.)

Phillips was treated at St. Cloud Hospital for vomiting and abdominal pain again on April 29, 2008.  (T. 514-15).  She did not appear to be in acute distress and had only mild epigastric tenderness on examination.  (Id.)  She was discharged that day after normal lab results, but she returned for the same symptoms on May 5, 2008.  (T. 509).  The next day, she saw Dr. Satre at Mid-Minnesota and felt somewhat better.  (T. 534).  She felt her symptoms had been secondary to narcotic withdrawal, but she was adamant that she was not a drug seeker.  (Id.)  She did not want to restart narcotic therapy, but she would continue to take pancreatic enzymes and Remeron.  (Id.)

Phillips was admitted to St. Cloud Hospital again on May 15, 2008.  (T. 557-61).
On examination, Phillips rated her abdominal pain four out of ten.  (T. 559).  Abdominal
ultrasound was normal with the exception of fatty liver.  (T. 560.)  She was discharged
when her pain resolved on May 18.  (T. 556).  Phillips admitted anxiety might play a
significant part in her pain, and she agreed to start Zoloft.  (Id.)

Several days later, Phillips returned to the hospital to get pain medicine but left
after learning her son was arrested.  (T. 550, 552).  She returned the next day, May 22,
but she did not appear to be "in any stress at all" and "did not look to be in any
significant pain."  (T. 550).  She was admitted, and her lab tests were normal.  (T. 551).
She was then discharged on May 25, with a diagnosis of acute viral gastroenteritis and
possible exacerbation of pancreatitis, but objective findings were negative.  (T. 544-45).

Phillips was admitted to St. Cloud Hospital again on June 21, 2008, with the
same complaints of vomiting and abdominal pain.  (T. 571-73).  She was in no distress
upon examination, with only mild abdominal tenderness.  (T. 572).  Phillips had been
doing great the previous day when she saw Dr. Satre.  (T. 571).  Lab tests and
ultrasound were normal.  (T. 572, 574).  She was admitted for pain management,
although she did not appear to be "distinctly ill."  (T. 576).  On June 30, Phillips was off
IV narcotics but was crying in pain and asking for more.  (T. 584-85).  She was
discharged on July 1, in stable condition.  (T. 567-69).

On September 10, 2008, Dr. Satre wrote a letter on Phillips' behalf to clarify her
alcohol usage.  (T. 566).  Dr. Satre stated that Phillips consistently reported quitting

alcohol in 1998, and according to their records, she had only two single day relapses, in May 2005 and October 2005.  (Id.)

**B.     Administrative Hearing**

On June 18, 2008, Phillips testified as follows at a hearing before an administrative law judge.  (T. 22).  Her last job was doing collections at Midland Credit. (T. 27).  She lived with a significant other, and she did light housework when her pancreatitis was not flared.  (T. 27-28).  When she took Trazadone to help her sleep, she was very tired the next day.  (T. 28).  Her weight was down to 101, from a normal of 121, because she could not eat and hold her food down.  (Tr. 28-29).  She did not always go to the emergency room for pain, she first tried to control it at home by drinking only water and taking pain medication.  (T. 29).  When she went to the hospital, she was given something for her upset stomach and stronger pain medication.  (Id.) Her pancreatitis caused severe, radiating abdominal pain, upset stomach, diarrhea and dehydration.  (T. 31).  She used fentanyl patches and Vicodin for pain.  (T. 32.)  Anxiety attacks and stress caused flares in her pancreatitis.  (T. 33).

Phillips described her panic attacks as being unable to catch her breath and being very nervous.  (Id.)  She had four or five attacks a month, lasting fifteen or twenty minutes.  (Id.)  They seemed to be brought on by stress, and she could not take herself to the hospital when she had a panic attack.  (T. 34).  The panic attacks did not start until after she stopped working.  (Id.)  She lost most of her jobs due to missing too much work.  (T. 37).

Wayne Onkin testified at the hearing as a Vocational Expert.  (T. 38).  The ALJ asked Onkin about what type of employment a hypothetical person of Phillips' age, education, work history, impairments of pancreatitis, thyroid condition, irritable bowel, depressive disorder, and panic disorder with agoraphobia and with the following limitations could perform:   light, unskilled work with brief and superficial contact with the public and coworkers, and no rapid or frequent changes in work routine.  (T. 38-39).  The VE testified that such a person could perform Phillips' past work as a cashier, fast food worker and information clerk.  (T. 39).  And, the VE testified such a person could perform other jobs including housekeeper, with 3,000 such jobs in Minnesota; inspector and hand packager, with 2,000 such jobs in Minnesota, and telephone survey worker, with 1,000 such jobs in Minnesota.  (T. 39).   If the physical exertional level was decreased to sedentary, there would be 1,000 cashier jobs available, 1,000 jobs as a final assembler and an equal number of jobs as a lens inserter.  (T. 40).   If the hypothetical person would be absent from work two or more days a month, she would not be capable of competitive employment.  (Id.)  Onkin also testified it would not be tolerated for a person to be dependable for two or three months, then miss five to ten days of work, and to repeat that cycle.  (T. 41).

### C.    The ALJ's Decision

In concluding that Phillips was not disabled, the ALJ followed the sequential, five-step process set forth in the Code of Federal Regulations.  See 20 C.F.R. §§  404.1520, 416.920.  Under the five-step sequential process, a claimant is disabled only if:  1) he or she is not presently engaged in substantial gainful activity; 2) he or she has a severe impairment that significantly limits his or her ability to perform basic work activities; 3)

his or her impairment is presumptively disabling; 4) if his or her impairment is not presumptively disabling, the claimant cannot perform his or her past relevant work; and 5) if the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner to prove that there are other jobs that exist in significant numbers that the claimant can perform.   Simmons v. Massanari, 264 F.3d 751, 754-55 (8th Cir. 2001).

At the first step, the ALJ found that Phillips had not engaged in substantial gainful activity since the alleged onset date of November 30, 2004 because, although she worked, her jobs were short-term or part-time and did not equal substantial gainful activity.  (T. 13).  At step two, the ALJ found that Phillips has severe impairments of chronic pancreatitis, hypothyroidism, depression and panic disorder.  (Id.)  At step three of the disability evaluation, the ALJ considered whether Phillips met or equaled a listed impairment and determined that she did not.  (T. 15-16).

After reviewing the record, the ALJ found that Phillips had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with additional restrictions of unskilled work with brief and superficial contact with the public and co-workers, and no rapid or frequent changes in work routine.  (T. 17).  In arriving at his RFC determination, the ALJ found that the objective evidence did not entirely corroborate Phillips' testimony about her functional limitations because many of her flares of pancreatitis were related to alcohol consumption, citing treatment records of May 2005, October 2005, October 2006 and November 2006.  (T. 17-18).  Furthermore, on physical examination Phillips had only minimal to mild abdominal tenderness during her flares.  (T. 18).

The ALJ found that Phillips did not seek counseling for depression and anxiety until November 2007.  (Id.)  When she started psychotherapy, her GAF score was 55, and when she was discharged, her GAF score increased to 60, indicating only mild to moderate symptoms.  (Id.)  The consultative examiner also assigned a GAF score of 55. (Id.)

The ALJ also found inconsistencies in Phillips' report of daily activities.  (Id.)  In November 2006, Phillips reported she did little more than sleep and watch television. (Id.)  Phillips' friend, however, reported that she also washed dishes, crocheted, talked on the phone, and attended church regularly.  (Id.)  Phillips also traveled back and forth to South Dakota to care for her mother, and after her mother's death, to take care of her estate.  (Id.)  Phillips watched her brother's children, and she went on a three week vacation and family reunion.  (Id.)  The ALJ found this inconsistent with panic attacks and unpredictable flares of pancreatitis that would prevent regular attendance at work. (Id.)

The ALJ found Phillips' fairly consistent work record to be a favorable credibility factor.  (T. 19).  The ALJ also noted Phillips told a treatment provider she lost her job in September 2006 due to corporate downsizing, not for impairment related reasons.  (Id.) The ALJ did not give the primary care physician's opinion controlling weight, because the physician did not provide any specific limitations regarding Phillips' functional ability. (T. 19).  The ALJ also rejected the physician's opinion that Phillips would have work absences in the future because Phillips did not pursue a work-up for diagnosis and more effective treatment for her condition.  (Id.)  The ALJ also cited the temporal

connection between many of Phillips' pancreatitis flares and her alcohol consumption, which was a factor within her control. (Id.)

The ALJ rejected the January 2007 treating physician opinion that Phillips would be restricted to lifting 25 pounds, working 20 hours a week, and could not withstand significant stress, because it was based on Phillips' subjective report of a relationship between stress and her pancreatitis flares. (Id.) The ALJ also rejected the opinion because it was in response to the claimant's need for a County disability determination, which is not determined under the laws governing Social Security disability. (Id.) The ALJ gave some weight to the state agency medical consultants' opinions to the extent they were consistent with objective findings. (Id.) The ALJ concluded that his RFC determination was supported by the absence of significant abnormal findings on physical and mental examinations, the fact that significant flares in the claimant's condition were directly related to alcohol consumption, and inconsistencies in Phillips' daily activities. (Id.)

At the fourth step of the disability evaluation, the ALJ relied on the VE's testimony and concluded Phillips could perform her past relevant work as a fast food worker and a cashier, and according to the VE testimony, there were other jobs Phillips could perform as well. (T. 20). Thus, the ALJ decided Phillips was not under a disability as defined in the Social Security Act. (Id.)

## III.    STANDARD OF REVIEW

Disability, as defined by the Social Security Act, is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   Judicial review of the Commissioner's disability decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole, in which case, it must be affirmed.  Collins ex rel. Williams v. Barnhart, 335 F.3d 726, 729 (8th Cir. 2003).  As the Court of Appeals has repeatedly stated, "the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard."  Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009) (quoting Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).

> 'Substantial evidence' is merely such 'relevant evidence that reasonable mind might accept as adequate to support a conclusion.' 'Substantial evidence on the record as a whole,' however, requires a more scrutinizing analysis.  In the review of an administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'  Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary.

Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).

"Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision.'"  Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).  "In reviewing the Commissioner's decision, "we do not substitute our own view of the evidence for that of the Commissioner."  Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005)  It is immaterial whether the record supports a contrary result or whether the reviewing court might decide the facts differently.  Id.  Therefore, "if

after reviewing the record, we find 'it possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, we must affirm the decision' of the Commissioner." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (quoting Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (citation omitted)).

## IV.    DISCUSSION

Phillips raises two issues in support of her motion for summary judgment.  First, she argues that the ALJ failed to grant proper weight to the RFC opinions of Dr. Satre, Dr. Lewis and Diane Bosl.  Second, Phillips contends the ALJ's determination that she can return to past relevant work is not supported by substantial evidence because the VE's testimony was in response to a faulty hypothetical question.

### A.    Whether the ALJ Erred in his Residual Functional Capacity Determination.

Phillips contends the ALJ's basis for his RFC determination, the reports of two nonexamining state agency doctors, was not substantial evidence.  Phillips notes that the state agency reviewing physicians completed forms to evaluate Phillips' RFC before some of the medical records existed, and thus, were not based on the full record. Phillips also contends the ALJ's reason for discounting the treating physicians' opinions was based on a material misstatement of fact that there is a temporal connection between Phillips' pancreatitis flares and alcohol consumption.  Phillips notes that there was no evidence of alcohol consumption for her hospitalizations of July 2006, October 2006, February, May and August 2007, and January, May and June 2008.

The Commissioner responds that a reviewing physician's opinion does not constitute substantial evidence by itself, but it may when considered with other medical evidence, as the ALJ did here.  The Commissioner also suggests Phillips failed to show how any evidence developed after July 2007, the last date the case was reviewed by a state agency reviewing physician, would have changed the ALJ's decision.   The Commissioner notes the ALJ cited examination reports and objective test results that revealed no more than mild or minimal abnormalities and no acute distress.   The Commissioner also cites to evidence in the record supporting the ALJ's conclusion that there was a connection between Phillips' pancreatitis flares and her alcohol use and notes inconsistencies in Phillips' reports of her alcohol use.

In making an RFC determination, the ALJ must evaluate every medical opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ should give a treating source's RFC opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); Heino v. Astrue, 578 F.3d 873, 879 (8th Cir. 2009) (quoting Wagner v. Astrue, 499 F.3d 842, 848-49 (8th Cir. 2007).  If the treating source's opinion is not entitled to controlling weight, the ALJ must apply the following factors in weighing the various medical opinions:   1) length of treatment relationship and frequency of examination; 2) nature and extent of treatment relationship; 3) supportability of opinion, particularly by medical signs and laboratory findings; 4) consistency of the opinion with the record as a whole; 5) specialization of the source; 5) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii); Heino, 578 F.3d at 879 (quoting Wagner,

499 F.3d at 848).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain . . . the weight given to the opinions of a State agency medical or psychological consultant."   20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii); Wilcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008).

The opinion of a nonexamining physician, standing alone, does not constitute substantial evidence in the record in the face of a conflicting assessment of a treating physician.  Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999).  However, if the ALJ did not rely solely on the nonexamining physician's opinion but also conducted an independent review of the medical evidence and other evidence, such as motivation to return to work and daily activities, then there is substantial evidence in the record to support the ALJ's RFC determination.  Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002).

Here, the ALJ's RFC determination was not based solely on the state agency consulting physicians' opinions; the ALJ reviewed all of the medical evidence and opinions, the claimant's testimony, and addressed credibility factors.  The question here is whether the treating providers' opinions were entitled to controlling weight, and if not, whether they were entitled to greater weight than that of the state agency consulting physicians.   There are three RFC opinions of treating providers in the record, Dr. Thomas Satre, Dr. Lois Sutherland and Licensed Psychologist Diane Bosl.  There is also an RFC opinion from a psychological consultative examiner, Dr. James Lewis, who examined Phillips once.

The treating providers presented the following opinions.  On July 10, 2007, Dr. Satre noted that Phillips had intermittent hospitalizations for chronic pancreatitis since 2001, and he opined that Phillips would likely continue to need intermittent hospitalizations, precluding her from work.  (T. 434).  In January 2007, Dr. Sutherland restricted Plaintiff to lifting 25 pounds due to her deconditioning and tender abdominal muscles.  (T. 429).  She also restricted Phillips to working twenty hours per week due to decreased stress tolerance and frequent pancreatitis flares.  (Id.)  On January 22, 2008, Psychologist Diane Bosl indicated that Phillips would have poor to no ability to do nineteen of twenty-three mental work-related activities.  (T. 490-91).

The ALJ gave three specific reasons for rejecting Dr. Satre's opinion that Phillips would have work absences in the future:  1) Dr. Satre did not provide any specific functional limitations; 2) Phillips did not pursue a work-up "for diagnosis and more effective treatment for her condition" (T. 19.); and 3) there was a temporal connection between many of Phillips' pancreatitis flares and her alcohol consumption; therefore, she could have prevented the flares by abstaining from alcohol.  As to the ALJ's first reason, it makes little difference that Dr. Satre did not describe Phillips' specific functional limitations because his opinion was Phillips would literally be unable to go to work because she would be hospitalized at times for treatment of chronic pancreatitis. The second reason given by the ALJ, the fact that Phillips did not pursue a recommended consultation at Mayo Clinic (see T. 19, 310, 401, 410, 377), suggests her symptoms were perhaps not severe enough for her to follow up on the referral.  See Social Security Ruling 96-7p, 1996 WL 374186 at *7 (July 2, 1996) ("the individual's

statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

On the other hand, because Phillips did not go to Mayo Clinic for evaluation, Dr. Brad Currier performed a gastroenterology consultation while Phillips was hospitalized. (T. 396).  He recommended an ERCP, and if it showed ductal abnormalities, Phillips' pancreatitis would be treatable by stent.   (Id.)   The ERCP was performed, but the results were normal.  (T. 386).  Therefore, there is no evidence of a specific treatment that Phillips neglected to pursue, only that she did not seek evaluation from Mayo Clinic as recommended.

The ALJ's third reason for discounting Dr. Satre's opinion is significant.  There is evidence that Phillips' chronic pancreatitis was a result of alcohol abuse, and other causes of pancreatitis were ruled out by lack of gallstones or ductal abnormalities.  (T. 386, 288, 273, 294, 281, 236, 432, 394, 379).  The ALJ cited occasions in 2005 and 2006 where there is evidence in the record that Phillips' pancreatitis was related to alcohol consumption (including Nyquil).  (T. 17-18).

The Court notes there are also occasions in 2007 and 2008 where Phillips denied consuming alcohol prior to her flare of abdominal pain and vomiting.  However, the record indicates Phillips was not always forthcoming about her alcohol use; she frequently reported not drinking alcohol for years, but other records indicated that she had.  (T. 361, 331, 285, 236, 394, 410, 415, 432, 492).  When Phillips was treated for pancreatitis flares, she was advised to abstain from alcohol consumption.  (T. 260, 386, 401).  Because there is evidence of occasions when Phillips' pancreatitis flares were

connected to alcohol consumption, and there is reason to doubt Phillips' credibility when she denied alcohol consumption connected to other pancreatitis flares, there is substantial evidence in the record to support the ALJ's conclusion.  See Wildman v. Astrue, 596 F.3d 959, 965 (rejecting treating physician's opinion where abdominal pain flares were precipitated by failure to comply with diet, medications and to totally abstain from drugs and alcohol).

The Court also notes that the ALJ considered the credibility of Phillips' subjective complaints of pain in assessing her RFC.  One reason the ALJ gave for discounting Phillips' credibility about the severity of her pain was that she had only minimal to mild abdominal tenderness during her flares of pancreatitis.  (T. 18).  With few exceptions, the evidence not only supports this finding, but also indicates that medical providers noted Phillips did not objectively appear to be in much pain when she was hospitalized for pain control.  (T. 260, 274, 310, 314, 522, 550, 559, 572, 576).[7]

In addition to Phillips' pain from chronic pancreatitis, Dr. Sutherland and Diane Bosl also opined that mental limitations would preclude Phillips from full-time work.  Dr. Sutherland cited Phillips' decreased stress tolerance, and Bosl indicated on a check-the-box type form that Phillips would have poor or no ability to do nineteen mental work-related activities.  Dr. Lewis, a one-time examining psychological consultant, opined that Phillips could not tolerate work stress.  The ALJ discounted these opinions for several reasons:  1) Phillips did not seek counseling for depression and anxiety until November 2007; 2) at the beginning and conclusion of psychotherapy, Phillips' GAF scores were

---

[7] There is also evidence in the record to suggest Phillips may have been going to the hospital to get narcotics because she had developed a dependence or tolerance to Vicodin, but the ALJ did not discuss or rely on this evidence.  (See T. 431-33, 534, 210, 266).

55 and 60, respectively, and Dr. Lewis also assigned a GAF score of 55; 3) the relationship between stress and pancreatitis flares was based on Phillips' subjective report and speculation; and 4) Phillips' ability to travel was inconsistent with disabling mental impairments.

It is true that Phillips did not seek counseling until November 2007, but she was on a starter dose of the antidepressant Effexor in August 2006, and the medication was effective in reducing her depression. (T. 207.) In March 2007, she was under increased stress because her mother died, and her son was arrested. (T. 422). However, in August 2007, Phillips reported that her depression and anxiety were not currently active. (T. 458). On November 1, 2007, Phillips was extremely stressed about her financial problems and her son's legal problems . (T. 523). This is when she began counseling with Diane Bosl. (T. 492). While hospitalized in January 2008, Phillips was diagnosed with depression, NOS; anxiety, NOS; mood disorder secondary to medical condition with features of major depressive disorder, and her GAF score was 50. (Tr. 525-26). Three months later, her depression and anxiety had improved. (Id.) Then, her anxiety increased in relation to her son's legal problems, and she had panic attacks. (T. 536). Phillips admitted anxiety might play a significant part in her pain, and she agreed to start Zoloft. (T. 556). This record is inconsistent with Phillips' testimony of having frequent, disabling panic attacks.

The ALJ's reliance on Plaintiff's GAF scores in determining that her mental impairments were not severe enough to preclude employment is supported by the record. Plaintiff's GAF score was 55 on February 1, 2007 and November 2, 2007; her GAF score was 50 on January 28, 2008, and 60 on February 29, 2008, which was

Phillips' last session with Bosl before her treatment was terminated for failure to attend an appointment or respond to a follow up letter.  (T. 507).  A history of GAF scores between 52 and 60 indicates only moderate difficulty in occupational functioning.  Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010).   The GAF scores are inconsistent with Dr. Sutherland's, Diane Bosl's and Dr. Lewis' opinions that Phillips' could not tolerate work stress or adequately perform mental work-related activities for unskilled work.   Instead, Phillips' treatable, and usually moderate, depression and anxiety are consistent with the ALJ's RFC finding of unskilled work with brief and superficial contact with the public and co-workers, and no rapid or frequent changes in work routine.  The Court also agrees with the ALJ's finding that Phillips' ability to care for her brother's children for a month and travel frequently during a time of significant stress in her life (see T. 482, 423, 431, 487) is inconsistent with an inability to perform limited unskilled work and tolerate some work stress, as reflected in the ALJ's RFC finding.   See Halverson, 600 F.3d at 932-33 (finding ability to care for self, do housework and travel inconsistent with assertion of disability.)

Treating providers' opinions are generally entitled to more weight than the opinions of nonexamining state agency consultants due to the frequency and nature of the treating relationship, especially when the state agency consultant did not have the benefit of reviewing the entire record.   See 20 C.F.R. §§ 404.1527(d), 416.927(d).  Notably in this case the treating providers' opinions were also not based on the full record.   See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("[the Commissioner] will evaluate the degree to which [the medical] opinions consider all of the pertinent evidence in your claim.")  Dr. Satre's opinion was given without the benefit of reviewing

medical records created after July 2007, Dr. Sutherland's opinion was given in January 2007, and Diane Bosl had a very brief treating relationship with Phillips, between November 2007 and February 2008 (T. 507).  In this case, Drs. Shields' and Grant's opinions were more consistent with the objective evidence and the record as a whole than the treating providers' opinions, despite the fact that Drs. Shields and Grant did not have the opportunity to read the medical records that were submitted after their reviews. This Court finds substantial evidence in the record to support the ALJ's RFC finding.

**B.     Whether the Vocational Expert's testimony is substantial evidence upon which the ALJ properly relied in making the disability determination.**

Phillips argues that the ALJ posed a faulty hypothetical question to the vocational expert regarding her functional abilities; therefore, the VE's testimony does not support the ALJ's determination that she can perform her past relevant work.   This Court finds that the ALJ included all of the impairments the ALJ accepted as true in the hypothetical question to the VE, and the ALJ's RFC finding is supported by substantial evidence in the record.   A hypothetical question that includes all impairments and limitations accepted as true by the ALJ, and supported by substantial evidence in the record, provides a proper basis for the ALJ to rely on the VE's response to the hypothetical question.  Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001).  Therefore, the VE's testimony that Phillips could perform her past relevant work is substantial evidence supporting the ALJ's disability determination.

## V.      CONCLUSION

Based on the foregoing and all of the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1.      Plaintiff's Motion for Summary Judgment [Docket No. 29] be DENIED;

2.      Defendant's Motion for Summary Judgment [Docket No. 35] be

GRANTED;  and

3.      If this Report and Recommendation is adopted, that Judgment be entered

accordingly.

Dated:  December 5, 2011

s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge


NOTICE


Pursuant to Local Rule 72.2, any party may object to this Report and

Recommendation by filing with the Clerk of Court, and serving all parties by December

19, 2011 a writing that specifically identifies the portions of the Report to which

objections are made and the bases for each objection.  A party may respond to the

objections within fourteen days of service thereof.  Written submissions by any party

shall comply with the applicable work limitations provided for in the Local Rules.  Failure

to comply with this procedure may operate as a forfeiture of the objecting party's right to

seek review in the Court of Appeals.  This Report and Recommendation does not

constitute an order or judgment from the District Court, and it is therefore not directly

appealable to the Court of Appeals.